IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | |
|---|---|
| MERYL CROSBIE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:18-cv-143 |
| | ) |
| MED FIRST IMMEDIATE CARE AND | ) |
| FAMILY PRACTICE, P.A., | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S COMPLAINT

Plaintiff, MERYL CROSBIE ("Plaintiff"), by and through her attorneys, Hormozdi Law Firm, LLC, alleges the following against Defendant, MED FIRST IMMEDIATE CARE AND FAMILY PRACTICE, P.A. ("Defendant"):

## INTRODUCTION

1. Count I of Plaintiff's Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. § 227, et seq. ("TCPA").

2. Count II of Plaintiff's Complaint is based on the North Carolina Debt Collection Act, § 75-50, *et seq.* ("NCDCA").

## JURISDICTION AND VENUE

3. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1367.

4. This court has federal question jurisdiction because this case arises out of violations of federal law. 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

5. This court has supplemental jurisdiction over the state claim alleged herein pursuant to 28 U.S.C. § 1367 it is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

1

6. Venue and personal jurisdiction in this District are proper because Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

**PARTIES**

7. Plaintiff is a natural person residing in the City of New Bern, Craven County, North Carolina.

8. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

9. Defendant is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

10. Plaintiff is a consumer as that term is defined by § 75-50(1) of the NCDCA.

11. Plaintiff allegedly owes a debt as that term is defined by § 75-50(2) of the NCDCA.

12. Defendant is a debt collector as that term is defined by § 75-50(3) of the NCDCA.

13. Defendant attempted to collect a consumer debt from Plaintiff.

14. Defendant is a North Carolina professional corporation with its headquarters located in the Jacksonville, North Carolina.

15. Defendant's business includes, but is not limited to, collecting on unpaid, outstanding account balances.

16. During the course of its attempts to collect debts allegedly owed to it, Defendant sends to alleged debtors bills, statements, and/or other correspondence, via the mail and/or electronic mail, and initiates contact with alleged debtors via various means of telecommunication, such as by telephone and facsimile.

17. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

**FACTUAL ALLEGATIONS**

18. Defendant is attempting to collect a consumer debt from Plaintiff, allegedly arising from a medical services account.

19. Plaintiff's alleged debt arises from transactions for personal, family, and household purposes.

20. In or around September 2017, Defendant began calling Plaintiff on Plaintiff's cellular telephone number at 713-303-7874.

21. On or about November 22, 2017, Plaintiff answered one of Defendant's collection calls and told Defendant to stop calling her.

22. Despite Plaintiff's request that Defendant stop calling her, Defendant continued to place collection calls to Plaintiff.

23. Despite Plaintiff's request that Defendant stop calling her, Defendant continued to send text messages to Plaintiff in an attempt to collect a debt.

24. A text message is a "call" as defined by the TCPA. *E.g., Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).

25. Defendant also inundates Plaintiff with communications attempting to collect a debt in the form of collection letters and email messages.

26. Defendant failed to disclose in all its communications with Plaintiff attempting to collect a debt that the purpose of such communication is to collect a debt.

27. The natural consequences of Defendant's statements and actions was to unjustly condemn and vilify Plaintiff for her non-payment of the debt she allegedly owes.

28. The natural consequences of Defendant's statements and actions was to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

29. The natural consequences of Defendant's statements and actions was to cause Plaintiff mental distress.

30. Despite Plaintiff's request that Defendant stop calling her, Defendant continued to call Plaintiff unabated in an attempt to collect on the alleged debt.

31. Defendant calls Plaintiff at an annoying and harassing rate.

32. Prior to calling Plaintiff's cellular telephone, Defendant knew the number was a cellular telephone number.

33. Defendant has never had Plaintiff's prior express consent to call her cellular telephone with an automatic telephone dialing system.

34. Even if Defendant somehow had Plaintiff's consent, such consent was revoked when Plaintiff told Defendant's collectors to stop calling her.

35. Defendant continued to call Plaintiff's cellular telephone after Defendant knew Plaintiff wanted the calls to stop.

36. Within four (4) years of Plaintiff filing this Complaint, Defendant used an automatic telephone dialing system to call Plaintiff's cellular telephone.

37. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to store telephone numbers.

38. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers automatically.

39. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers without human intervention.

40. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers in sequential order.

41. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers randomly.

42. The telephone dialer system Defendant used to call Plaintiff's cellular telephone select telephone numbers to be called according to a protocol or strategy entered by Defendant.

43. The telephone dialer system Defendant used to call Plaintiff's cellular telephone simultaneously calls multiple consumers.

44. Within four (4) years of Plaintiff filing this Complaint, Defendant left pre-recorded voicemail messages for Plaintiff on Plaintiff's cellular telephone.

45. Defendant's calls constitute calls that are not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

46. The dead air that the Plaintiff may have experienced on the calls that she received is indicative of the use of an automatic telephone dialing system. This "dead air" is commonplace with autodialing and/or predictive dialing equipment. It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated. Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff. The dead air is essentially the autodialer holding the calls it placed to Plaintiff until the next available human agent is ready to accept them. Should the calls at issue been manually dialed by a live human being, there would be no such dead air

as the person dialing Plaintiff's cellular telephone would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

47. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's cellular telephone without prior express consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

> a. Invading Plaintiff's privacy;
> b. Electronically intruding upon Plaintiff's seclusion;
> c. Intrusion into Plaintiff's use and enjoyment of her cellular telephone;
> d. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of her cellular telephone; and
> e. Causing Plaintiff to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

## COUNT I:
## DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

48. Defendant's conduct violated the TCPA by:

> a. Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice without consent in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiff, MERYL CROSBIE, respectfully requests judgment be entered against Defendant, MED FIRST IMMEDIATE CARE AND FAMILY PRACTICE, P.A., for the following:

49. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

50. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1),

Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

51. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future.

52. Any other relief that this Honorable Court deems appropriate.

## COUNT II:
## DEFENDANT VIOLATED THE
## NORTH CAROLINA DEBT COLLECTION ACT

53. Plaintiff repeats and re-alleges paragraphs 1-47 of Plaintiff's Complaint as the allegations in Count II of Plaintiff's Complaint.

54. Defendant violated the North Carolina Debt Collection Act based on the following:

   a. Defendant violated § 75-51 of the North Carolina General Statutes when it attempted to collect a debt alleged to be due and owing by an attempt to coerce payment of the alleged debt when Defendant continued to place collection calls to Plaintiff after Plaintiff requested Defendant stop calling her;

   b. Defendant violated § 75-52 of the North Carolina General Statutes when it used conduct the natural consequence of which is to oppress, harass, or abuse any person in connection with the attempt to collect the alleged debt when Defendant continued to place collection calls to Plaintiff after Plaintiff requested Defendant stop calling her;

   c. Defendant violated § 75-52(3) of the North Carolina General Statutes when it caused a telephone to ring or engaged a person in a telephone conversation with such frequency as to be unreasonable or constitute harassment to the person under the circumstances because Defendant continued to call Plaintiff multiple times even

after Plaintiff told Defendant to stop doing so;

   d. Defendant violated § 75-54 of the North Carolina General Statutes by attempting to collect a debt concerning a consumer by any fraudulent, deceptive, or misleading representation when Defendant created the false impression on Plaintiff that Defendant was permitted by law to continue to call Plaintiff with impunity despite Defendant being told to stop calling Plaintiff;

   e. Defendant further violated § 75-54(2) of the North Carolina General Statutes by failing to disclose in all communications attempting to collect a debt that the purpose of such communication is to collect a debt when Defendant failed to make such disclosures in all of its telephone calls, text messages, letters, and emails to Plaintiff.

   a. Defendant violated § 75-55 of the North Carolina General Statutes by attempting to collect any debt by use of unconscionable means when Defendant engaged in the foregoing misconduct.

55. Defendant's actions constituted an unfair act by engaging in the above-referenced misconduct in or affecting commerce because Defendant is collecting on a consumer debt and proximately caused Plaintiff's injuries.

WHEREFORE, Plaintiff, MERYL CROSBIE, respectfully requests judgment be entered against Defendant, MED FIRST IMMEDIATE CARE AND FAMILY PRACTICE, P.A., for the following:

56. Actual damages and civil penalties of not less than $500.00 nor greater than $4,000.00 per violation pursuant to North Carolina General Statute § 75-56(b);

57. Punitive damages pursuant to North Carolina General Statute § 75-56(c);

8

58. Costs and reasonable attorneys' fees; and

59. Any other relief that this Honorable Court deems appropriate.

                                          Respectfully submitted,
                                          HORMOZDI LAW FIRM, PLLC

August 16, 2018                     By: /s/ Shireen Hormozdi
                                               Shireen Hormozdi
                                               Hormozdi Law Firm, PLLC
                                               North Carolina Bar No. 47432
                                             1770 Indian Trail Road, Suite 175
                                             Norcross, GA 30093
                                             Tel:  678–395-7795
                                             Cell:  678-960-9030
                                             Fax: 866-929-2434
                                             shireen@agrusslawfirm.com
                                             shireen@norcrosslawfirm.com